## Heacox, Appellant, v. Polce.

Argued March 20, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Louis C. Glasso*, with him *John Caputo*, for appellant.

*Charles M. Barrickman,* with him *Wallover & Barrickman,* for appellee. .

OPINION PER CURIAM, May 2, 1958:

Judgment is affirmed on the opinion of Judge FRANK E. REED for the court below.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

At about 11 o'clock on the night of October 13, 1955, Warner Heacox started across Route 88 in Conway, Beaver County, when he was struck by an automobile, travelling with such velocity that he was knocked into the air like a violently-hit tenpin. Describing the incident later, Haecox said: "Well, I went up in the air. I know I went in the air a considerable distance, it seemed to me because I turned a turtle." Allowing for a little exaggeration in the narrative it is still credible that the impact was far from the caress of a gentle breeze, because it is undisputed that when Heacox returned from his rapid flight, the femur bone of his left leg was projecting through the flesh.

He brought suit against the owner and operator of the car. The jury found in favor of the defendant and Heacox moved for a new trial on the asserted basis that the Trial Judge erred when he would not allow Heacox to testify to his estimate of the speed of the car which brought him to grief. In refusing the motion on this ground the Trial Judge said: "It thus appears from the plaintiff's testimony that from the time the defendant crossed from the westerly to the easterly lane of the southbound lanes at about Fourteenth Street until the time of the impact the plaintiff *had not observed the speed of the defendant's automobile."**

---

* Italics throughout, mine.

This is an assumption on the part of the Trial Judge that is not warranted by the record. The plaintiff testified that he first saw the headlights of the defendant's car when they were about 900 or 1000 feet away. He said that he kept looking at the car as he made the crossing, and that at one point the driver "seemed to accelerate the speed of the car." Thus, it was not necessary that the plaintiff's calculation of speed be limited to the stretch of road indicated by the Trial Judge.

The plaintiff was well qualified to estimate vehicular speed. In the first place he had been familiar with this particular crossing for a period of eight years; in the second place he was a veteran automobilist, having driven for some 22 or 23 years; and in the third place he was a railroad conductor by occupation and had been a railroad worker for some 30 years, thus having developed a practised eye for distance and movement of cars.

When the plaintiff's attorney asked him: "Are you able to estimate the speed of which this car was traveling immediately before it struck you?" the defendant's lawyer objected: "If the Court please, in view of the testimony, that he says he just observed the headlights a minute before the impact, I don't believe he had it under observation long enough to give an opinion as to any speed. We object to it." In view of the fact that the defendant's attorney stated that the plaintiff had observed the headlights "a *minute* before the impact," it is difficult to understand what the Trial Judge meant when he said, in his opinion refusing a new trial, that "the plaintiff had not sufficient time to observe the speed of defendant's automobile immediately before the impact." Even assuming that the defendant's counsel may have overestimated the time that the plaintiff said he had seen

the car before the impact, it is still apparent from all the testimony that the plaintiff had watched it for a sufficient duration to appraise its speed.

When defendant's counsel objected to the question above quoted, the Trial Judge, 'in sustaining the objection, ruled: "The objection is sustained. It would be purely conjecture on his part."

How did the Trial Judge know that it would be "purely conjecture" on the part of the plaintiff? With his driving experience of 23 years and his railroad experience of 30 years, it was possible the plaintiff could pronounce a rather trustworthy judgment on the speed of the automobile which he had seen for "a minute" before it hit him. It is not the function of a judge, even if he had that kind of X-ray eyes, to look into a witness's mind to read what might be there. The plaintiff testified that, as already stated, he first saw the car's movement when it was about 1000 feet distant, he looked at the car at least five times as it approached, he noted that when the car was several hundred feet away it crossed from the west side to the east side of the southbound lane. This change in direction would have offered additional opportunity for the plaintiff to calculate the car's speed.

The Trial Judge's ruling which took speed out of the description of the accident sent the case to the jury in an utterly incomplete state. In nearly every automobile accident case, and certainly it was true in this case, the speed of the striking car is a vital part of the picture of the accident. To take speed out of the description is like taking curry out of mulligatawny soup. The resulting concoction will probably still have flavor, but it will not be mulligatawny soup. Removing speed from this case watered the plaintiff's charge of negligence down to a nullity. From that moment

on, the trial was merely a form, and the Trial Judge might as well have entered a compulsory nonsuit.

The Trial Judge, in endeavoring to justify his ruling, said in his opinion refusing a new trial that: "It is difficult to determine speed by the speed of an approaching headlight." It is a mistaken assumption that one may not estimate the speed of an approaching car, especially if it is seen from an angle, as the plaintiff did in this case. In *Shaffer v. Torrens,* 359 Pa. 187, 193, this Court, speaking through Justice (now Chief Justice) JONES, said: "There is no rule of law, whereof we are aware, that excludes opinion evidence as to speed if the witness presents the requisite qualifications, viz., an observation of the vehicular movement in question and a recognition of impressions of like vehicles at relative speeds."

It would appear from a reading of the record that the learned Trial Judge was too quick on the trigger in sustaining the objection of defendant's counsel when plaintiff's counsel asked the plaintiff about the speed of the car, and it is regrettable that this Court feels impelled to sustain that unfortunate ruling. A little less speed by the Trial Judge in making the ruling might have taken the case to its termination without a blemish, and a little less longanimity at this level regarding high-speed and high-powered rulings might send this case back for the new trial to which the plaintiff, in my opinion, is most certainly entitled.

Accordingly, I dissent.