Wolfe *v.* Pickell et al., Appellants.

Argued September 15, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*William P. Thorn,* with him *Thorn, McConemy &amp; Ohrenstein,* and *Rocap and Rocap,* for appellants.

*Benson Zion,* for appellees.

OPINION BY WATKINS, J., December 16, 1964:

This appeal is from the judgment of the Court of Common Pleas of Delaware County refusing appellants' motion for a new trial.

The case was tried before a judge and jury and resulted in a verdict for appellees in the sum of nine thousand five hundred twenty-seven dollars and twenty-eight cents ($9527.28) including interest, and for the appellants, on their counterclaim, in the sum of one thousand dollars ($1000); this verdict was then molded by agreement to one for appellees in the sum of eight thousand five hundred twenty-seven dollars and twenty-eight cents ($8527.28).

In reviewing this matter on appeal we are constrained to view all evidence in a light most favorable to the appellees and to draw all inferences therefrom in their favor since they are the winners of the verdict.

A review of the record yields the following summary of events. The appellants were the owners of an Early American home on Paper Mill Road in Newtown Square, Pennsylvania, to which they wanted to make additions and extensive renovations. Plans were apparently secured and bids were sought on a fixed price

contract. The appellees were asked to bid but refused because they were too busy and because they were unable to make a firm bid because of the nature of the old structure and the work to be done.

The parties to this action were not strangers, appellees had done jobs for appellants on at least two prior occasions on the basis of labor and material oral contracts, which resulted in appellants actively seeking appellees' services to do the work now contemplated. As stated by all parties to this controversy it was finally agreed in May, 1959 that appellees would undertake the job on a material and labor basis.

The work was begun on or about May 4, 1959 and completed November of 1959. Though estimates had been made at various times by appellees, ranging from eighteen thousand to thirty-five thousand dollars, and at one time an estimate of twenty-eight thousand dollars, based upon a set of prints and specifications to enable appellants to secure a loan from a Building and Loan Association, the final bill totaled thirty-eight thousand ninety-two dollars and fifty-six cents ($38,092.56) for labor, and materials, including subcontractors. Periodic payments totaling twenty-seven thousand eight hundred twenty-five dollars ($27,825) had been made upon statements rendered by appellees, the last one being October 18, 1960.

During the course of the construction, the appellees, who are partners, at various times were actively engaged in the work as working foremen and an hourly charge for their services was included in the charge for labor, and justly so, since this was not purely an administrative or office overhead charge which should be absorbed from the profit charged elsewhere.

The nature of a material and labor contract in the construction business has a definite meaning, as indicated by the appellees and all the experts called by both sides, i.e., labor, is charged not at the actual

hourly rate of the various classes of workmen hired but at a higher rate which is acceptable in the area. Material is charged at market plus ten per cent. and subcontractors figured at their charge plus ten per cent. This is what was done in the case at issue. The reasonableness of the various charges was left for the determination of the jury, after a very fair and comprehensive charge by the court below, to which no exception was made and which was acknowledged by all to be very fair and complete.

Appellants raise questions which largely concern the introduction of evidence, such as: fair and reasonable charges for labor and material; time spent by partners in supervision; overhead and administrative expenses; procuring material at more than the lowest price and introduction of prints which were not used in the construction. This matter of the introduction of evidence is largely within the discretion of the trial court and a new trial will not be granted unless fundamental error has been committed or it has abused its discretion. *D'Allura v. Perri,* 138 Pa. Superior Ct. 261, 10 A. 2d 124 (1939).

The opinion of the court below adequately explains its reasoning and shows a clear awareness of the problems involved in the trial of this case and there is clearly no basis for a new trial, when it said:

"It is true that in the trial of this case, the court admitted evidence which would suit one of three types of contracts, that is, a fixed price, a cost plus, or a time and materials contract, and it is true that in the charge the trial judge instructed the jury on the measure of damages to be applied respectively to the foregoing types of contract. This course, on the part of the court, was made indispensable and mandatory by reason of the issues raised by the pleadings, by the evidence, and the position taken by the parties at the trial, and the one thing this record does clearly dis-

close is that this jury had first to decide what type of contract was involved and then, having decided that, the jury had to apply the rule of damages applicable to the particular type of contract.

"It is entirely possible that this record also discloses that certain specific parts of the work may have fallen in different contractual categories. Plaintiffs maintained throughout the proceeding that, in essence, the oral contract was a labor and materials, or time and materials type contract, tempered by the custom and usages of the trade, as well as the intent of the parties, and this is reflected in plaintiffs' pleadings and evidence produced at trial.

"The defendants, in their pleadings, admitted that the original oral contract was a 'labor and materials' type contract; however, also in the pleadings and at the trial, they contended that the said type of contract was converted into a fixed price contract sometime after the work was initiated. The defendants also contended that the plaintiffs' theory of labor and material or time and materials was incorrect and that this facet of the plaintiffs' case should have been on a cost-plus basis. These, then, were the issues which the court and the jury had to determine. Which was it and, therefore, which measure of damages applied?

"To meet these varied issues, the court adopted and maintained throughout the trial and in the charge these specific rules of law relating to damages and the basis of recovery, . . .".

There were no objections to the definitions of the various contractual categories made by the court below in its charge to the jury as an aid in considering all the evidence. These definitions read as follows: As to a specific oral contract, changed to a fixed price contract during construction: "If you find that at some point before the job was completed, the plaintiffs agreed to do the work for a fixed price—that is what

we are talking about now—then you need not consider the cost of plaintiffs' time and material—that of course would be the contract—unless of course there were changes and additions made after that; then that would come within the rule of extras on the new contract."; Time and material contracts: "If, on the other hand, you find that at all times this was a time and material contract then you must try to arrive at the cost of the plaintiffs' time and material. Time and material contracts are contracts which provide for the payment to the contractor of the cost of his labor and materials, plus a percentage for his overhead and profit. And time and material costs include only those that are direct operating charges which may be seen as the work progresses. And, of course, the plaintiff, if he charges separately for supervision, cannot charge as time and labor costs for time spent by certain partners in supervising or administering the job."; and a cost plus contract: "If this were a cost plus job, . . . then each item of cost including itemized exact items of overhead would have to be proved before the agreed profit or plus item is added. And even though you agree that there is no duplication here—and that is for you—you must find the cost items in each category, including overhead and profit, you must find them to be fair and reasonable and such as generally charged in the area for comparable services and material."

As to the introduction of the prints, this was felt necessary to refute appellants' contention that the original agreement was novated to a fixed price contract. *Com. v. Clark,* 123 Pa. Superior Ct. 277, 187 A. 237 (1936).

Judgment affirmed.